575 So.2d 640 (1991)
Aida HERNANDEZ, Petitioner,
v.
STATE of Florida, Respondent.
No. 74210.
Supreme Court of Florida.
February 14, 1991.
Richard L. Jorandby, Public Defender and Tanja Ostapoff, Asst. Public Defender, Fifteenth Judicial Circuit, West Palm Beach, for petitioner.
Robert A. Butterworth, Atty. Gen., and James J. Carney and John M. Koenig, Jr., Asst. Attys. Gen., West Palm Beach, for respondent.
KOGAN, Justice.
We have for review Hernandez v. State, 540 So.2d 881 (Fla. 4th DCA 1989), based upon express and direct conflict with State v. Fletcher, 530 So.2d 296 (Fla. 1988), and Collins v. State, 535 So.2d 661 (Fla. 3d DCA 1988). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
Aida Hernandez was convicted of trafficking in cocaine in excess of 400 grams and of conspiracy to traffic in cocaine in excess of 400 grams. The offenses occurred in March 1987. The guidelines' recommended sentence was five and one-half to seven years in prison. At sentencing in August 1987, the trial judge departed from the recommended sentence and imposed two concurrent twenty-five-year sentences and a fine of $250,000. The reasons given in support of the departure sentence were: (1) the crime was committed in a professional manner; and (2) the drug transaction involved a large amount of cocaine.
On appeal, the Fourth District found the first reason for departure to be *641 valid but rejected the second reason as invalid. Because the district court could not determine from the record whether the trial judge would have imposed the departure sentence based solely on the professional nature of the crime, the sentence was vacated and the cause remanded for a new sentencing hearing.[1]
In a number of opinions, the district courts of appeal have addressed the issue of whether the professionalism of the crime is a valid reason for departure from the recommended guideline sentence.[2] Some of these cases involved drug offenses of trafficking, possession, and conspiracy, while others were robbery, burglary, or grand theft cases. For example, in Mullen v. State, 483 So.2d 754 (Fla. 5th DCA 1986), the Fifth District found that possession of cocaine with intent to sell or deliver was committed in a professional manner because a secret compartment had been installed in the vehicle used for transporting the cocaine.
The Second District in Hoyte v. State, 518 So.2d 975 (Fla. 2d DCA 1988), determined that possession of cannabis was committed in a professional manner where twenty-one pounds of marijuana was packaged by wrapping it in brown paper and in carbon paper, and then sealing it inside a solid fiberglass container.
Similarly, the First District found that concealing stolen articles of clothing in leg warmers worn under trousers while committing grand theft, Dickey v. State, 458 So.2d 1156 (Fla. 1st DCA 1984), and that wearing a disguise and using a sawed-off shotgun during the commission of a robbery, Gray v. State, 522 So.2d 91 (Fla. 1st DCA 1988), were sufficient factors to support departure based on the professionalism of the crime.
Florida law now is settled that a departure may not be based on any matter already factored into the guidelines' computations. In Hendrix v. State, 475 So.2d 1218 (Fla. 1985), we stated:
To allow the trial judge to depart from the guidelines based upon a factor which has already been weighed in arriving at a presumptive sentence would in effect be counting the convictions twice which is contrary to the spirit and intent of the guidelines.
Id. at 1220. One factor clearly factored into the guidelines' computations is a person's prior criminal record. Id. The more extensive this prior record, the greater will be a defendant's sentence.
Engaging in a criminal activity in a "professional" manner implies that an individual *642 has performed that activity extensively, with great skill or experience. See American Heritage Dictionary 989 (2d ed. 1982). It suggests that a person engages in a particular activity with such frequency that it constitutes an occupation. Oxford American Dictionary 533 (1980). Thus, "professionalism" generally means a higher level of skill acquired from frequent repetition of the activity in question.
We thus must conclude that "professionalism" is an aspect of a defendant's background that is computed in the presumptive guidelines' sentence by means of a defendant's prior criminal history. Accordingly, even if it could be clearly established that professionalism of the crime is related to the experience of the defendant, this fact already is taken into account and may not be considered twice. Hendrix. The district court erred in ruling otherwise.
We also question whether the present offenses and those in many of the cases cited above can appropriately be characterized as "professional" in nature. Here, the facts more closely suggest that the crime was planned, not that it was committed skillfully or based on extensive experience. Moreover, the acts cited as rendering these crimes "professional" are what one would expect of individuals engaged in a criminal scheme or in an attempt to avoid discovery. We find nothing particularly professional about the defendant's actions.
In State v. Fletcher, 530 So.2d 296, 297 (Fla. 1988), this Court rejected the argument that calculated planning "with sophistication and well organized premeditation including `months of plotting and scheming'" was a valid reason to support a departure from the recommended guideline sentence in a drug-trafficking and conspiracy-to-traffic case. We found this reason to be invalid based on the observation that "`all large drug trafficking cases, not to mention those involving a conspiracy, would "inherently" involve calculated premeditation and planning.'" Id. (quoting Fletcher v. State, 508 So.2d 506, 507 (Fla. 4th DCA 1987)). An inherent component of the crime in question can never be used to justify a departure from the guideline. State v. Mischler, 488 So.2d 523, 525 (Fla. 1986).
We believe there is little distinction between planning and premeditation and the professional manner in which a crime is committed. As we have stated, the facts relied upon in this case and in many of the district court cases cited above reveal planning on the part of each defendant, not skillfulness. This type of planning is common to most crimes and thus cannot constitute a valid reason for departure. Id.
Finally, we are not convinced that the term "professionalism" can be narrowly defined in any way that would make it an acceptable reason for departure. As the discussion and case law above reveal, any common dictionary definition would too easily authorize a departure for almost any type of crime that involves conspiracy, advance planning, or special skill. Similarly, a person with an extensive criminal record might be deemed a "professional," even though prior record is factored into the guidelines. The word "professionalism" thus is too vague to constitute a valid reason for departure.
Nor do we believe we should torture the word "professionalism" into some artificially narrow meaning that would better comply with the guidelines. Any effort to do so would only duplicate other reasons for departure that we already have accepted as valid. For example, our case law holds that a departure sentence may be proper where a person's criminal record exhibits an "escalating course" of criminality. Keys v. State, 500 So.2d 134, 135 (Fla. 1986).
For these reasons we find the professional manner in which a crime is committed to be an invalid reason for departing from a recommended guideline sentence in any case.[3] The sentence in this case is vacated, and the cause is remanded to the trial court for resentencing in accordance with this *643 opinion. Because no valid reasons for departure remain, no further departure shall be permitted.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT and GRIMES, JJ., concur.
NOTES
[1] The crimes charged in this case occurred prior to the enactment of chapter 87-110, Laws of Florida, which provides that a departure sentence should be affirmed if the trial court furnishes one valid reason for departure even though other invalid reasons also are stated. Under State v. McGriff, 537 So.2d 107 (Fla. 1989), and the ex post facto clauses of the Florida and federal constitutions, this amendment cannot be applied retroactively to crimes occurring prior to the effective date of July 1, 1987. Thus, this particular portion of chapter 87-110 may not be applied to the present case. We recognize that chapter 87-110, Laws of Florida, also changed the burden of proof for departure reasons from "clear and convincing" to a mere "preponderance." Our opinion in McGriff did not address whether this change in burden of proof also falls within the prohibition of the ex post facto clause. We need not address that question, because we find that our decision today would be the same whether the burden is "clear and convincing" or a mere "preponderance."
[2] Campbell v. State, 558 So.2d 34 (Fla. 1st DCA 1989); Rivera v. State, 543 So.2d 441 (Fla.3d DCA 1989); D'Angelo v. State, 541 So.2d 706 (Fla. 4th DCA 1989); Stowers v. State, 541 So.2d 715 (Fla. 1st DCA), review denied, 548 So.2d 663 (Fla. 1989); Collins v. State, 535 So.2d 661 (Fla. 3d DCA 1988); Krebs v. State, 534 So.2d 1236 (Fla. 5th DCA 1988), review denied, 542 So.2d 1333 (Fla. 1st DCA 1989); Rodrique v. State, 533 So.2d 931 (Fla. 1st DCA 1988); Varela v. State, 530 So.2d 960 (Fla. 2d DCA 1988); Martin v. State, 523 So.2d 1226 (Fla. 1st DCA), review denied, 529 So.2d 694 (Fla. 1988); Gray v. State, 522 So.2d 91 (Fla. 1st DCA 1988); Hoyte v. State, 518 So.2d 975 (Fla.2d DCA 1988); Downing v. State, 515 So.2d 1032 (Fla. 1st DCA 1987), quashed in part on other grounds, 536 So.2d 189 (Fla. 1988); Young v. State, 502 So.2d 1347 (Fla.2d DCA 1987); Roberts v. State, 500 So.2d 338 (Fla. 4th DCA 1986); Williams v. State, 497 So.2d 716 (Fla.3d DCA 1986), review denied, 506 So.2d 1043 (Fla. 1987); Lewis v. State, 496 So.2d 211 (Fla. 1st DCA 1986); Mullen v. State, 483 So.2d 754 (Fla. 5th DCA 1986); Brown v. State, 480 So.2d 225 (Fla. 5th DCA 1985); Dickey v. State, 458 So.2d 1156 (Fla. 1st DCA 1984).
[3] We decline to address the other issue raised by the parties because it is not relevant to the resolution of the conflict issue.